**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

MONG-TUYEN NGUYEN, an individual; BRANDI WALLACE, and individual;

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin mutual insurance company; USAA GENERAL INDEMNITY COMPANY, a Texas corporation.

      Defendants.

_____

**CLASS ACTION COMPLAINT AND JURY DEMAND**

**JURY TRIAL REQUESTED**

_____

For their Class Action Complaint and Jury Demand, Plaintiffs say:

## I.    NATURE OF THE ACTION

1.    In Colorado, automobile insurance companies must offer their insureds medical payments coverage of at least $5,000.  They must also disclose to their insureds all material terms of an insurance policy upon issuance.  Time limitations on medical payments coverage are material to any insured purchasing medical payments coverage because they limit the ability of the insured to make use of the coverage for medium and longer term medical conditions which often afflict people injured in automobile accidents.  An insurance company misleads its insureds when it promotes coverage for "reasonable health care expenses incurred for bodily injury caused by an automobile accident," without disclosing the coverage is subject to a limit as short

as one year, a limit set by the insurance company even though the statute itself does not limit the duration of the coverage.

2.      This case is brought as a class action on behalf of all insureds of American Family Mutual Insurance Company ("American Family"), and USAA General Indemnity Company ("USAA") (collectively, "Defendants") to remedy the fact that Defendants represent that their coverage will cover accident-related injuries but fail to disclose to their insureds a time limitation on medical payments coverage under their Colorado medical payment coverages.   By this deceptive nondisclosure, Defendants have induced thousands of Colorado residents to purchase thousands of dollars of medical payments coverage and later denied claims for benefits, asserting that the undisclosed time limitations excluded coverage. Because larger medical expenses will often take longer to accrue, the larger the amount of coverage purchased, the less likely it is that an insured will receive the benefit of that coverage before the coverage expires.

3.      Automobile insurers must offer prospective insureds coverage for medical payments ("Med-Pay").  C.R.S. § 10-4-635.  Med-Pay essentially covers policyholders and their families, as well as occupants of their vehicles, for medical expenses for injuries arising out of the use of a car, regardless of fault.  Coverage extends to "all medically necessary and accident-related health care and rehabilitation services."  *Id.* § 10-4-635(5)(e).  The statutory definition and scheme of Med-Pay coverage does not include any time limitation.

4.      Automobile insurers must also disclose the availability of Med-Pay coverage and the material terms of the insurance policy.  C.R.S. § 10-4-636(4).

5.      Plaintiff Mong-Tuyen Nguyen ("Nguyen") seeks relief because American Family has chosen to evade, rather than honor, its obligations under Colorado law by selling a coverage

for accident-related injuries while failing to disclose that it imposes a one-year time limitation on Med-Pay policies of $10,000 or less, and a three-year time limitation on Med-Pay policies exceeding $10,000.  In the sales process, American Family asks its insureds to select a particular coverage limit for Med-Pay coverage, and supplies each insured, including Nguyen, a standardized, uniform disclosure form that states Med-Pay coverage pays for "reasonable health care expenses incurred for bodily injury caused by an automobile accident," and that the coverage applies "up to the limit you choose." American Family's disclosure forms make no mention of any time limitation on coverage.  But the Med-Pay coverage does not apply to all accident-related health care expenses and does not pay claims up to the coverage limit chosen by the insured because it is subject to an undisclosed time limit.

6.      Plaintiff Brandi Wallace ("Wallace") also seeks relief because USAA has likewise chosen to evade, rather than honor, its obligations under Colorado law by selling coverage for accident-related injuries while failing to disclose that it imposes a one-year time limitation on all its Med-Pay policies.  In the sales process, USAA asks its insureds to select a particular coverage limit for Med-Pay coverage, and supplies each insured, including Wallace, a standardized, uniform disclosure form that states Med-Pay coverage pays for "reasonable health care expenses incurred for bodily injury caused by an automobile accident," and that the coverage applies "up to the limit you choose." USAA's disclosure forms make no mention of any time limitation on coverage.  But the Med-Pay coverage does not apply to all accident-related health care expenses and does not pay claims up to the coverage limit chosen by the insured because it is subject to an undisclosed time limit.

7.      The Med-Pay statute does not permit any time limitation on Med-Pay coverage.

8.      All of the policies at issue are uniform, standardized policies in all relevant respects.  All of the policies at issue are subject to Colorado's statutory requirement that an insurer offer Med-Pay coverage. All prospective insureds must be provided the disclosure form, and are required to receive sufficient information to make an intelligent decision about whether coverage should be purchased or not.

9.      By misrepresenting the nature of the product and failing to disclose an arbitrary and material time limit on Med-Pay coverage, Defendants have misled their insureds about the nature of their coverage, deprived them of the opportunity to compare different coverage levels, and deceived them into purchasing coverage that they would not have otherwise purchased.

10.     Because Defendants misrepresented the nature of the product and failed to disclose to Plaintiffs and the class that Med-Pay is subject to undisclosed, arbitrary time limits, the time limits are invalid, resulting in greater coverage for class members.

11.     Similarly, because Defendants failed to offer time-unlimited coverage in compliance with the requirements of the Med-Pay statute, time-unlimited coverage is automatically incorporated into the insurance contract under the Med-Pay statute itself, resulting in greater coverage for class members.

12.     As a result of Defendants' above-described conduct, Plaintiffs and similarly situated insureds have not received the coverage or payments to which they are entitled according to their policies and Colorado law.  As a result, they either owe their providers for services rendered or have paid, in one form or another, for expenses that should have been covered by their insurance, and they have had their physician-patient relationships frustrated and impaired by virtue of the nonpayment.

13.     Plaintiffs and class members have all incurred damages as a result of Defendants' above-described conduct, including, but not limited to, loss of Med-Pay-covered benefits, statutory damages, and related economic damages.   Plaintiffs now seek monetary relief consisting of all amounts improperly withheld and not paid, statutory damages, interest, exemplary damages, and declaratory and injunctive relief reforming policy terms and prohibiting continuation of these improper practices.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the parties because Defendants continuously and routinely do business in the State of Colorado, are licensed and authorized to do business in Colorado, and have, within the relevant times alleged herein, transacted business throughout Colorado.  The acts of which Plaintiffs complain on behalf of themselves and all class members stem from conduct that occurred in Colorado.

15.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1404 as the accident giving rise to the matters complained of herein occurred in Colorado.

16.     Federal diversity jurisdiction attaches to this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

17.     The proposed class includes residents of Colorado and other states.

18.     Defendant American Family is a mutual insurance company organized under the laws of Wisconsin with its principal place of business in Wisconsin.

19.     Defendant USAA is a corporation organized under the laws of Texas and with its principle place of business in Texas.

20.     For purposes of CAFA, American Family is treated as an unincorporated association, and is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

21.     Plaintiffs seek relief which includes, among other things, monetary damages, including without limitation double damages pertaining to denied claims as well as statutory damages of $500 per violation, on behalf of a class which is believed to include more than twenty thousand consumers. The aggregate amount in controversy therefore exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

### III.   PARTIES

22.     Nguyen was at all relevant times a resident of Jefferson County, State of Colorado.

23.     At all times pertinent, Nguyen was insured under a policy of automobile insurance with American Family that included "Medical Expense Coverage" for any insured who was injured in an accident involving a motor vehicle.

24.     American Family is a Wisconsin mutual insurance company that is licensed and authorized to conduct business in Colorado and, at all times pertinent, was engaged in the business of selling automobile insurance policies in the State of Colorado, including El Paso and Jefferson Counties, Colorado.

25.     USAA continuously and routinely conducts business in Colorado, and, at all times pertinent, was engaged in the business of selling automobile insurance policies and administering claims in the State of Colorado, including El Paso and Jefferson Counties, Colorado.

26.     Wallace was at all relevant times a resident of El Paso County, State of Colorado.

27.     At all times pertinent, Wallace was insured under an automobile insurance policy issued by USAA that included "Medical Payments Coverage" for any insured who was injured in an accident involving a motor vehicle.

## IV.   FACTUAL ALLEGATIONS

28.     Plaintiffs reallege and reassert all allegations contained in previous paragraphs.

## A.     Facts Relating to All Classes

29.     Defendants offer automobile insurance policies for sale in Colorado, which they offer and issue on uniform, standardized forms.

30.     American Family's policy form, or a version which is identical in all material respects, is used for all of American Family's Colorado insureds.   The form contains the following language in its Med-Pay provision:

> We will pay only those expenses incurred for services rendered within one year from the date of the accident.   If the limit of liability for Medical Expense Coverage shown in the Declarations is more than $10,000 we will pay covered expenses for services rendered within three years from the date of the accident.

(Exhibit 1, at 15.)

31.     USAA's standard policy defines Med-pay coverage as follows:

> A. Medical Payments Coverage.
>
>   1.   We will pay only the reasonable fee for medically necessary and appropriate medical services and the reasonable expenses for funeral services.   These fees and expenses must:
>
>   a.   Result from bodily injury sustained by a covered person in an auto accident; and
>
>   b.   Be incurred for services rendered within one year of the date of the auto accident.

(Exhibit 2 at p. 15.)

32.     Plaintiffs and the class were issued policies with Med-Pay provisions identical to the language above.

33.     Plaintiffs and all class members are all potential or actual first-party claimants under Defendants' automobile insurance policies.

34.     Under C.R.S. § 10-4-635, an insurer must offer medical payments coverage that provides benefits of at least five thousand dollars for all medical care resulting from the ownership, maintenance or use of one's motor vehicle.  If no such offer was made, or if the insurer offers Med-Pay coverage on terms inconsistent with the statute, the insured's policy is presumed to include coverage which complies with the statute.  Only after the statutory coverage is offered properly and rejected in writing may an insurer offer coverage that is different from the statutorily required offer.

35.     The required disclosure must be reasonably calculated to provide sufficient information to permit an informed and intelligent decision by the insured about the offered coverage.  Moreover, Colorado statutes expressly require that an insurer offering Med-Pay coverage disclose specific terms of medical payments coverage.  C.R.S. § 10-4-636(4).

36.     Among other things, Colorado statutes expressly require every insurer offering Med-Pay coverage to disclose as follows: "Medical payments coverage pays for reasonable health care expenses incurred for bodily injury caused by an automobile accident, regardless of fault, up to the policy limits chosen by the insured."  C.R.S. § 10-4-636(4)(a) (emphasis added).

37.     Further, Colorado statutes broadly prohibit deceptive business practices, including misrepresentations in the course of selling insurance policies.  *See* C.R.S. §§ 6-1-105; 10-3-1104; 10-4-636(1)(d).

38.     Upon information and belief, no document provided by Defendants to Plaintiffs in advance of the agreement to purchase insurance disclosed the fact of the time limitation to Plaintiffs and the class.

39.     Consistent with their routine practice, Defendants failed to provide a copy of the insurance policy to Plaintiffs before they agreed to purchase insurance from Defendants.

40.     In offering Med-Pay coverage, Defendants provided written disclosures that misrepresented the nature of the product and failed to disclose an arbitrary and material time limit upon the coverage.

41.     For instance, in the disclosure filed in 2006, American Family represents that Med-Pay will cover "reasonable, appropriate, and necessary medical expenses, up to the limit you choose."  (Emphasis added.)  Reading this language, a reasonable prospective insured of American Family would assume that he or she is entitled to the benefit of the full coverage limit for medical expenses arising from the accident, regardless of when they are incurred.

42.     Similarly, in its disclosure filed in 2012, American Family states that Med-Pay coverage will pay "reasonable health care expenses incurred for bodily injury caused by an automobile accident."  A prospective insured would naturally understand from this language that Med-Pay coverage would remain available for expenses regardless of when they are incurred, so long as they arise from an accident-related injury.

43.     American Family drafted the language contained in the Med-Pay section of its Summary Disclosure Forms.  Despite a statutory requirement to disclose the scope of medical payments coverage, American Family consciously chose not to include disclosures regarding

time limitations on Med-Pay coverage which are necessary to prevent the disclosures from being materially misleading.

44.     The Declarations page of Nguyen's policy notes Med-Pay coverage as follows: "END 83 MEDICAL EXPENSE $10,000 EACH PERSON."  (Exhibit 1, at 3.)

45.     Likewise in its disclosure form, USAA represents that "Medical payments coverage pays for reasonable health care expenses incurred for bodily injury caused by an automobile accident, regardless of fault, up to the policy limits chosen by the insured."

46.     The disclosure form encourages the insured to "read the policy to see who is a covered person under medical payments coverage," but does not mention that any other limitations on coverage might exist.

47.     USAA drafted the language contained in the Med-Pay section of its Summary Disclosure Forms.  Despite a statutory requirement to disclose the scope of medical payments coverage, USAA consciously chose not to include disclosures regarding time limitations on Med-Pay coverage, or even a mention that additional restrictions other than those mentioned in the form existed, which are necessary to prevent the disclosures from being materially misleading.

48.     The Declarations page of Wallace's policy notes Med-Pay coverage as follows: "PART B – MEDICAL PAYMENTS EA PER $ 5,000."  (Exhibit 2, at 3.)

49.     The Med-Pay statute does not permit any time limitation on Med-Pay coverage. Defendants imposed the time limitation on coverage unilaterally.

50.     Defendants' time limitation on Med-Pay coverage substantially reduces the value of Med-Pay coverage for a large population of insureds.  Individuals injured in automobile

accidents often suffer injuries which require multiple years of care. Such care might include physical therapy, rehabilitation, or even surgery if more conservative therapies fail to offer relief after a period of time. Yet under Defendants' policies, thousands of individuals will receive no benefits for care which takes place more than one year after the accident.

51.     A one-year or three-year time limitation on Med-Pay coverage is a fact basic and necessary to the understanding of a reasonable consumer considering whether to purchase Med-Pay coverage from a given insurer. Unless a time limitation on Med-Pay coverage is disclosed, an insured cannot understand the fundamental value of the Med-pay coverage, compare coverage from one insurer to the next, or compare Med-Pay coverage to traditional health insurance coverage. Nor can an insured evaluate the relative value of purchasing Med-pay coverage in varying amounts.

52.     Because Defendants' disclosures failed to mention time limitations, the disclosures were materially misleading. Consumers purchasing Med-Pay coverage were misled to believe that such coverage would cover all reasonable and necessary accident-related medical expenses, not just those expenses incurred during an arbitrary time period.

53.     Indeed, Defendants are not alone in this deceptive practice. Numerous other automobile insurers have implemented arbitrary time limits on Med-Pay coverage in their policies. Numerous other automobile insurers have also failed to disclose these arbitrary time limits to consumers purchasing automobile insurance. These secret time limitations vary from insurer to insurer. For example, while American Family imposes a one-year time limitation, Farmers Insurance imposes a two-year time limitation. Yet both insurers are required by law to

offer Med-Pay coverage of $5,000.   While two offers of $5,000 in coverage might appear equivalent, they are materially different for reasons which are not disclosed.

54.     If insurers are permitted to conceal the fact that an arbitrary time limit applies to Med-Pay coverage, misrepresenting the nature of the product they are offering, consumers in the marketplace have no reasonable way to compare policies, limits, and rates for Med-Pay coverage.

55.     If insurers are permitted to impose arbitrary and material time limits upon Med-Pay coverage without clear disclosure, the insurers will have defeated the purpose of the Med-Pay Act by unilaterally limiting the value of Med-Pay coverage without the knowledge or consent of the insured.

56.     If insurers are permitted to impose arbitrary and material time limits upon Med-Pay coverage without disclosing those time limits, the insurers will have defeated the purpose of the Med-Pay Act by rendering the statutorily required disclosure incomplete and misleading.

57.     If insurers are permitted to impose arbitrary and material time limits upon Med-Pay coverage without the knowledge or consent of the insured, insureds will be unfairly and deceptively deprived of insurance benefits which they expected would be paid when they purchased their Med-Pay coverage.

58.     Because Defendants failed to disclose an arbitrary and material time limitation on Med-Pay coverage consistent with the requirements and purpose of the Med-Pay Act, the time limitation is void and unenforceable.   Properly construed, the auto insurance policies must provide coverage for all medical expenses for bodily injury caused by an automobile accident, up to the applicable policy limits, no matter when those expenses are incurred.

59.     Moreover, Defendants failed to offer time-unlimited Med-Pay coverage as required by C.R.S. § 10-4-635.  Plaintiffs were not offered and did not reject the coverage that the statute requires.  Instead, Defendants limited their offer of Med-Pay to claims arising within one or three years of a covered accident, in violation of the statute.

60.     Because Defendants failed to offer Med-Pay in compliance with the statutory requirement, every insurance policy is presumed to include coverage which complies with the statute.  Any one-year or three-year limitation on Med Pay in an automobile insurance policy is void and unenforceable because it dilutes, conditions, or limits statutorily mandated coverage.

61.     Nonetheless, Defendants refuse to pay for expenses associated with treatment for accident-related medical services. Defendants have included the time limitations expressly in the standard policy terms that they offer to class members.  And Defendants have used it as a matter of course during their claims processing to deny claims.

**B.      Facts Relating to the Denied and Deterred Claims Subclass**

62.     Nguyen was injured in an automobile accident on April 9, 2012.

63.     At the time of the accident, Nguyen was insured under the terms of American Family's pre-printed policy referenced as 20554819-01. (Exhibit 1.)

64.     Nguyen's policy included Med-Pay coverage, providing as follows:

> We will pay to or on behalf of an insured person usual and customary medical expenses and funeral services because of bodily injury sustained to an injured person as a result of an accident.  Medical expenses must be provided and prescribed by a licensed medical provider performing within their scope of practice.

(Exhibit 1 at 15.)

65.     Nguyen sustained bodily injury as a result of the April 9, 2012 accident, and received accident-related medical treatment, including treatment by her family physician Dr. Pierre Brunschwig in Boulder, Colorado, physical therapy from Mountain Air Physical Therapy in Boulder, Colorado, and chiropractic care from Lifetime Health & Wellness in Broomfield, Colorado.   All of the treatment was necessary to treat the injuries she sustained.  If any of the treatment rendered was not received, Nguyen would have incurred or had persist conditions or symptoms that did not exist before she was in the automobile accident.

66.     Nguyen complied with all requirements of American Family's policy, and proof of the amount of Nguyen's medical expenses was submitted to American Family, in accordance with C.R.S. § 10-4-642 and 3 Colo. Code Regs. § 5-1-14.  American Family's payment in part of Nguyen's medical expenses establishes that the treatment rendered was for medical expenses for necessary medical services for bodily injury sustained by an insured person.

67.     Between April 2012 and May 2013, Nguyen submitted approximately 36 bills for medical treatment to American Family. The medical bills reflected charges for chiropractic treatment, physical therapy, and follow-up care.

68.     American Family paid approximately $5,700 toward Nguyen's medical bills for treatment received between April 2012 and May 2013.  These payments did not exhaust the $10,000 limit on Med Pay coverage under Nguyen's policy.

69.     Nevertheless, American Family restricted or denied payment of Nguyen's medical expenses after April 9, 2013 based on an undisclosed, unenforceable one-year limit on Med-Pay coverage. American Family had not previously disclosed the one-year limit to Nguyen and the one-year limit was invalid under Colorado law.

70.     Even though more than one year had passed since the date of the accident, Nguyen still required medical treatment for her accident-related injuries, including but not limited to physician care and physical therapy.  Nguyen continued to seek and obtain regular follow-up care for accident-related injuries through the end of the year 2013 and afterward.

71.     Wallace was injured in an automobile accident on October 1, 2011.

72.     Wallace sustained injury as a result of the accident.  Consequently, she received medical treatment including care for post-traumatic stress disorder.  All of her treatment and care was rendered to treat the injury Wallace sustained in her October 1, 2011, accident.  USAA initially denied coverage for claimed treatment for inadequate documentation, and then in March 2013 rejected coverage based on its one-year limitation on Med-Pay benefits.

73.     Additional treatments are also necessary to treat the injuries Wallace sustained in the October 1, 2011, automobile accident.  All care was recommended or prescribed to Wallace for her accident-related injuries.  If Wallace had or does not receive any of these treatments, her injuries, conditions, or symptoms resultant from the accident would persist or worsen.

74.     Even though more than one year has passed since the date of the accident, Wallace still requires medical treatment for her accident-related injuries.  To the extent she can afford it, Wallace pays out of her own pocket for her current accident-related care, or incurs liens for her treatment because Defendants' policy does not pay for treatment or care incurred more than one year post-accident.  Due to financial pressure and lack of coverage, Wallace has had to forego seeking some medical care that is necessary and otherwise would have been rendered.

75.     Plaintiffs and the class have declined to seek additional treatment or seek reimbursement for treatment received because Defendants have erroneously informed them that their Med-Pay coverage is subject to a time limit.

76.     Plaintiffs and the class have declined to seek additional treatment or seek reimbursement for treatment received because Defendants have failed to offer Med-Pay coverage which complies with Colorado law.

77.     Plaintiffs are entitled to reformation of their automobile insurance policy, including without limitation the invalidation of any time limitation on Med-Pay, as well as statutory damages and other relief.

## V.     CLASS ACTION ALLEGATIONS

78.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.  Plaintiffs can prove all causes of actions based on common, class-wide proof.  Plaintiffs bring all claims herein individually and as a class action (for the class defined below), pursuant to Fed. R. Civ. P. 23.  The requirements of subparts 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

### CLASS DEFINITION

79.     The class consists of two subclasses as follows:

All persons to whom Defendants delivered or issued for delivery in Colorado, within the meaning of C.R.S. § 10-4-635, an automobile insurance policy on or after January 1, 2009 without first offering time-unlimited medical payments coverage, and

(1) who suffered injuries in a covered automobile accident, and whose claims did not exceed $5,000 or the dollar

amount of Med-Pay coverage provided in the policy, whichever is greater, (**the Denied and Deterred Claims Subclass**);

(2) whose policies remain in effect, or will become effective, during and/or after the pendency of this litigation, or who are members of the Denied and Deterred Claims Subclass. (**the Injunction Subclass**).

### NUMEROSITY

80.     While the exact number of members cannot be determined yet, the class consists at a minimum of tens of thousands of persons located throughout the State of Colorado, as Defendants annually write over 250,000 private passenger policies in Colorado.  The members of the class are therefore so numerous that joinder of all members is impracticable.  The exact number of class members can readily be determined by review of information maintained by Defendants.

### COMMONALITY

81.     There are questions of fact and law common to the class, including the following:

a.      Whether Defendants failed to disclose that Med-Pay coverage was subject to a one-year or three-year limitation on covered treatment;

b.      Whether Defendants' failure to disclose time limits on Med-Pay coverage was materially misleading;

c.      Whether Defendants' failure to disclose time limits on Med-Pay coverage violated Colorado law, including the Colorado Consumer Protection Act, C.R.S. § 6-1-105, the Unfair Competition-Deceptive Practices Act, C.R.S. § 10-3-1104, and the Med-Pay Act, C.R.S. §§ 10-4-635, 10-4-636.

d.      Whether Defendants violated C.R.S. § 10-4-635 by narrowing or restricting Med-Pay coverage by adding a time limitation on covered treatment;

e.      Whether Defendants breached their contractual obligations to Plaintiffs and all Subclasses by failing to offer and/or provide time-unlimited medical payments coverage for medical expenses up to policy limits;

f.      Whether members of the Injunction Subclass are entitled to reformation of their insurance policies so as to provide time-unlimited medical payments coverage by operation of law;

g.      Whether Defendants breached their contractual and statutory obligations to Plaintiffs and the Denied and Deterred Claims Subclass by failing to pay medical expenses;

h.      Whether members of the Denied and Deterred Claims Subclass were damaged by Defendants' failure to disclose time limitations on Med-Pay coverage;

i.      Whether members of the Denied and Deterred Claims Subclass were damaged by Defendants' failure to offer time-unlimited medical payments coverage;

j.      Whether Defendants' conduct, including without limitation their failure to disclose time limitations on Med-Pay coverage, failure to make a required offer of coverage, and failure to pay benefits when due, was willful and wanton;

k.    Whether Defendants' denial of Med-Pay benefits to eligible insureds constituted a breach of the covenant of good faith and fair dealing;

l.    Whether Defendants' use of time limitations constituted a willful and wanton breach of the contract of insurance ;

m.   Whether Defendants' schemes to avoid paying medical expenses violate the Colorado Consumer Protection Act, C.R.S. § 6-1-105, and the Unfair Competition-Deceptive Practices Act, C.R.S. § 10-3-1104.

## TYPICALITY

82.    Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of all members of the class.  Plaintiffs' claims are coincident with and not antagonistic to those of other class members they seek to represent.  Plaintiffs and all class members have sustained damages arising out of Defendants' common course of conduct as outlined herein.  The damages of each class member were caused by Defendants' wrongful conduct.

## ADEQUACY OF REPRESENTATION

83.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in insurance litigation and class action litigation.  Plaintiffs have no disabling conflicts with the members of the class and will fairly and adequately represent the interests of the class members.

84.    Defendants' actions are generally applicable to the class as a whole, and Plaintiffs seek, *inter alia*, equitable and legal remedies with respect to the class as a whole.

## COMMON QUESTIONS PREDOMINATE, AND THE
## CLASS ACTION DEVICE IS SUPERIOR

85.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresee little difficulty in the management of this case as a class action.

## FIRST CLAIM FOR RELIEF:
### Deceptive Trade Practices-Violation of C.R.S. § 6-1-105(1)
### (All Plaintiffs and Subclasses)

86.     Plaintiffs reallege and reassert all allegations contained in previous paragraphs.

87.     Defendants' actions complained of herein are deceptive trade practices that have the capacity to and do deceive consumers, as both before and after issuing its policies, Defendants knowingly made false representations and material omissions as to the characteristics and benefits of their Med-Pay coverage and insurance policies and represented that they were of a particular standard, quality, or grade knowing they were not.

88.     As described above, Defendants have engaged in deceptive trade practices, including but not limited to (1) marketing and issuing policies containing a one- or three-year time limitation on Med-Pay without disclosing in advance to the insured the existence and nature of the time limitation; (2) providing misleading disclosure statements regarding the terms, scope, and availability of Med-Pay; (3) failing to offer time-unlimited Med-Pay to all insureds as required by statute; (4) marketing and issuing policies containing a time limitation on Med-Pay

which was void and unenforceable; (5) falsely implying that the time limitation of coverage appearing in its policy language was valid and enforceable; and (6) limiting or denying coverage, and discouraging insureds from seeking coverage, based upon a void and unenforceable coverage limitation. Defendants' restrictive policy language related to limiting Med-Pay coverage to treatment incurred within a certain time does not appear in any disclosure form or other documents provided to Defendants' insureds prior to their purchase of the policy.

89.     Defendants' aforementioned conduct is in violation of the Colorado Consumer Protection Act, in particular, but not limited to, C.R.S. § 6-1-105(1)(f), (g) and (u).

90.     Under *Showpiece Homes Corporation v. Assurance Company of America*, 38 P.3d 47 (Colo. 2001), Defendants' conduct is in violation of the Colorado Consumer Protection Act insofar as this conduct consists of untrue, deceptive, or misleading statements with respect to the business of insurance and/or unfair claim practices in violation of C.R.S. § 10-3-1104(1); Defendants' conduct in violation of C.R.S. § 10-3-1104(1) includes but is not limited to:

a)     Misrepresenting and falsely advertising an insurance policy by making statements, estimates, disclosures, and/or omissions which misrepresent the benefits, advantages, conditions, or terms of the insurance policy in violation of C.R.S. § 10-3-1104(1)(a)(I);

b)     Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue in violation of C.R.S. § 10-3-1104(1)(h)(I);

c)     Providing deceptive or misleading summary disclosure forms to the public regarding insurance policy provisions relating to coverages at issue in violation of C.R.S. § 10-3-1104(1)(b);

d)     Failing to disclose known material information concerning insurance policy provisions relating to coverages at issue with the intent to induce consumers to enter into a transaction, in violation of C.R.S. § 6-1-105(1)(u);

e)  Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies in violation of C.R.S. § 10-3-1104(1)(h)(III);

f)  Refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of C.R.S. § 10-3-1104(1)(h)(IV);

g)  Failing to adopt and implement reasonable standards for the prompt resolution of medical payment claims in violation of C.R.S. § 10-3-1104(1)(h)(XVII);

h)  Making false or fraudulent statements or representations relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit in violation of C.R.S. § 10-3-1104(1)(j);

i)  Violating or not complying with any insurance law contained in part 6 of article 4 of title 10 of the Colorado Revised Statutes, which violates C.R.S. § 10-3-1104(1)(l);

j)  Certifying, issuing, soliciting, or using a policy form that does not comply with statutory mandates in violation of C.R.S. § 10-3-1104(s)-(u);

k)  Violating or not complying with C.R.S. § 10-4-635, including failure to provide coverage for all health care expenses incurred for bodily injury caused by an automobile accident as required by statute and/or up to the policy limit selected by the insured; and

l)  Violating or not complying with C.R.S. § 10-3-1115, including unreasonably delaying or denying payment of the claims for benefits submitted by Plaintiff and Subclass members.

91.     Defendants' aforementioned deceptive trade practices continue to occur in the course of their business. Due to Defendants' large share of the insurance market in Colorado, this conduct is part of a generalized and uniform course of conduct repeated on hundreds or thousands of occasions, and thus has a significant impact on the public as actual or potential consumers of the their services. As established and licensed insurers, Defendants possess

superior bargaining power and sophistication in insurance matters compared to all Plaintiffs and class members, and the deceptive trade practices described herein have previously impacted other consumers and have a significant potential to do so in the future.

92.     As a result of Defendants' actions, all Plaintiffs and Subclass members incurred damages in amounts to be proven at trial, including any applicable statutory damages.

### SECOND CLAIM FOR RELIEF:
### Bad Faith Breach Of Insurance Contract
### (Denied and Deterred Claims Subclass)

93.     Plaintiffs reallege and reassert all allegations contained in previous paragraphs.

94.     Defendants owed the Denied and Deterred Claims Subclass members, as their insureds, a duty of good faith and fair dealing at all times during the sale and existence of the insurance contract and while providing Med-Pay insurance coverage, including when handling Med-Pay claims.

95.     As described above, Defendants purposefully, in bad faith, and without regard to the rights of the Denied and Deterred Claims subclass members, failed to disclose the terms of Med-Pay coverage offered, falsely implied that a time limitation on coverage was permitted under the terms of the contract and the law, and impermissibly reduced Med-Pay benefits in violation of the terms of the contract of insurance (when properly construed, in accordance with Colorado law) by denying payment of accident-related medical expenses based upon the time limitation.  In addition, Defendants have persisted in claiming they have a right to impose such a restriction even after having the issue brought to their attention, based on an unreasonable reading of the law, when they knew or recklessly disregarded that Colorado law does not permit

such a limitation.  Defendants' actions have prevented and/or deterred Plaintiffs from seeking benefits to which they are entitled by contract.

 96.  Defendants' unfair acts and/or acts of bad faith include but are not limited to:

 a) untrue, deceptive, or misleading statements with respect to the business of insurance as well as unfair claim practices in violation of C.R.S. § 10-3-1104(1);

 b) Misrepresenting and falsely advertising an insurance policy by making statements, estimates, disclosures, and/or omissions which misrepresent the benefits, advantages, conditions, or terms of the insurance policy in violation of C.R.S. § 10-3-1104(1)(a)(I);

 c) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue in violation of C.R.S. § 10-3-1104(1)(h)(I);

 d) Providing deceptive or misleading summary disclosure forms to the public regarding insurance policy provisions relating to coverages at issue in violation of C.R.S. § 10-3-1104(1)(b);

 e) Failing to disclose known material information concerning insurance policy provisions relating to coverages at issue with the intent to induce consumers to enter into a transaction, in violation of C.R.S. § 6-1-105(1)(u);

 f) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies in violation of C.R.S. § 10-3-1104(1)(h)(III);

 g) Refusing to pay claims without conducting a reasonable investigation based upon all available information in violation of C.R.S. § 10-3-1104(1)(h)(IV);

 h) Failing to adopt and implement reasonable standards for the prompt resolution of medical payment claims in violation of C.R.S. § 10-3-1104(1)(h)(XVII);

 i) Making false or fraudulent statements or representations relative to an application for an insurance policy for the purpose of obtaining a fee, commission, money, or other benefit in violation of C.R.S. § 10-3-1104(1)(j);

j)      Violating or not complying with any insurance law contained in part 6 of article 4 of title 10 of the Colorado Revised Statutes, which violates C.R.S. § 10-3-1104(1)(l);

k)      Certifying, issuing, soliciting, or using a policy form that does not comply with statutory mandates in violation of C.R.S. § 10-3-1104(s)-(u);

l)      Violating or not complying with C.R.S. § 10-4-635, including failure to provide coverage for all health care expenses incurred for bodily injury caused by an automobile accident as required by statute and/or up to the policy limit selected by the insured; and

m)      Violating or not complying with C.R.S. § 10-3-1115, including unreasonably delaying or denying payment of the claims for benefits submitted by Plaintiff and Subclass members.

97.      Defendants breached the covenant of good faith and fair dealing with the aforementioned conduct by acting unreasonably under the circumstances. Defendants knew they were obligated by contract and required by law to pay the reasonable medical accident-related expenses incurred by the Denied and Deterred Claims Subclass members up to the applicable limit of coverage and knew that a time limit on such coverage was invalid, or recklessly disregarded the fact that a time limit on Med-Pay coverage was invalid.

98.      Defendants' breach of the covenant of good faith and fair dealing caused the Denied and Deterred Claims Subclass members to incur damages in amounts to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Violation of C.R.S. § 10-3-1115**
**(Denied and Deterred Claims Subclass)**

99.      Plaintiffs reallege and reassert all allegations contained in previous paragraphs.

100.    Defendants are not permitted to "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant" such as Plaintiffs and the Denied and Deterred Claims Subclass members.

101.    The Denied and Deterred Claims Subclass members are entitled to Med-Pay coverage for health care expenses incurred for bodily injury caused by an automobile accident, up to the statutory limit or policy limit, whichever is greater.   Any time-limit on Med-Pay coverage is invalid as a product of misrepresentations, and under Colorado law.

102.    Defendants have unreasonably delayed or denied payment of the claims for covered medical expenses of the Denied and Deterred Claims Subclass members because Defendants failed to disclose time limitations on Med-Pay, misrepresented the terms of Med-Pay, failed to offer time-unlimited Med-Pay, and refused claims, denied claims, or delayed payment for claims by invoking a void and unenforceable time limitation, without a reasonable basis for its actions. C.R.S. § 10-3-1115(2).

103.    Instead of providing a reasonable basis for denying or delaying payment of these claims, Defendants rely on a time-limited Med-Pay policy term that is the product of deception and, moreover, conflicts with statutory requirements for Med-Pay coverage and offers of Med-Pay coverage.   Pursuant to C.R.S. § 10-4-635,   the Denied and Deterred Claims Subclass members are entitled to time-unlimited Med-Pay coverage up to policy limits or statutory limits, whichever is greater, for health-care expenses incurred for bodily injury caused by an automobile accident.

104.    Defendants' misrepresentations and statutory violations described herein have resulted in a systematic failure to pay Med-Pay benefits due and owing under Colorado law and

breached the statutory duties owed to the Denied and Deterred Claims Subclass members under C.R.S. § 10-3-1115, as well as in violation of C.R.S. § 10-3-1104(1).

105.    The Denied and Deterred Claims Subclass members are first-party claimants as defined in C.R.S. § 10-3-1115, and due to Defendants' deceptive statements and omissions, their statutory violations, and their failure to pay the Med-Pay benefits due, are entitled to recover two times the amount of the unpaid benefits along with their reasonable attorney fees and court costs under C.R.S. § 10-3-1116.

106.    In addition, Defendants' statutory violations have caused damage to the Denied and Deterred Claims Subclass members in amounts to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Declaratory Relief**
**(Injunction Subclass)**

107.    Plaintiffs reallege and reassert all allegations contained in previous paragraphs.

108.    Plaintiffs bring this cause of action for  the Injunction Subclass pursuant to 28 U.S.C. § 2201 et seq., seeking a declaration that:

a.    for those who maintain an auto insurance policy currently in force with Defendants which contains a Med-Pay provision, Defendants' requirement that charges for treatment payable under Med-Pay coverage be incurred within a time limit of the date of a covered accident is void and unenforceable because Defendants failed to disclose the time limitation to its insureds in advance;

b.    for those who maintain an auto insurance policy currently in force with Defendants which contains a Med-Pay provision, Defendants' requirement

that charges for treatment payable under Med-Pay coverage be incurred within a time limit of the date of a covered accident is void and unenforceable because the policy term dilutes, conditions or limits statutorily-mandated coverage;

c.     for those who maintain an auto insurance policy currently in force with Defendants which does not contain a Med-Pay provision, time-unlimited Med-Pay coverage with benefits of $5,000 arises under the policy by operation of law because Defendants failed to make an offer of mandatory Med-Pay coverage which complied with Colorado statutory and disclosure requirements; and

d.     that Defendants are enjoined from enforcing any currently existing time limitation on Med-Pay benefits contained in any policy issued in Colorado, and are also enjoined from offering any Med-Pay benefits in Colorado that contain any time limitation unless they first offer time-unlimited Med-Pay coverage.

109.     This Court has the power to declare the rights of said Defendants' policyholders and those who would be insured under such policies and who may suffer similar losses in the future, including those policyholders and injured persons who have suffered Med-Pay covered losses.

110.     Plaintiffs seek a declaration of the rights of those insured under Defendants' policies, and seek a declaration of the rights and liabilities of the parties herein.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.    An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.    An order appointing Plaintiffs as class representatives and appointing the undersigned counsel to represent the class;

C.    Declaratory relief for the Injunction Subclass, including a declaration that (1) current policies of class members without Med-Pay coverage are presumed to include $5,000 of time-unlimited Med-Pay coverage; (2) Defendants' purported time restriction on current Med-Pay coverage of class members is void and unenforceable; (3) enjoining Defendants from enforcing any currently existing time limit on Med-Pay benefits for any insurance policy issued in Colorado; and (4) enjoining Defendants from offering Med-Pay benefits in Colorado containing a time limit on the benefits unless they first offer unlimited-in-time Med-Pay benefits.

D.    Statutory damages under the relevant statutes, including but not limited to double damages under C.R.S. § 10-3-1116 and statutory damages under the Colorado Consumer Protection Act for each class member;

E.    Compensatory economic damages as warranted by Defendants' statutory violations and breaches of the contracts of insurance;

F.    An Order requiring for those class members whose Med-Pay payments made by Defendants were less than the amount charged to or for each class member, payment by Defendants of amounts equal to that which should have been paid under the contract and law as Med-Pay benefits, less any amount previously paid by Defendants;

G.      For Plaintiffs individually, for those claims for which such damages are available under Colorado law, an award of compensatory noneconomic damages and statutory claims, based on proof and determined separately from class damages;

H.      An award of attorney's fees and costs, as provided by law, including but not limited to C.R.S. § 10-3-1116 and the Colorado Consumer Protection Act, and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class;

I.      Interest as provided by law, including but not limited to statutory interest pursuant to C.R.S. § 10-4-642 and pre-judgment and post-judgment interest as provided by rule or statute;

J.      An award of exemplary damages based on Defendants' intentional, willful, and wanton violations of Colorado insurance law and the rights of its insureds; and

K.      Such other and further relief as this Court may deem just, equitable or proper, including a designation that any unclaimed monies may go to the next best use.

DATED this March 27, 2015.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By:  *s/ Robert B. Carey*

Robert B. Carey
Hagens Berman Sobol Shapiro LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Tel. (602) 840-5900
Fax (602) 840-3012
rob@hbsslaw.com

*Counsel for Plaintiffs*

John Lee
Fuicelli and Lee, P.C.
1731 Gilpin Street
Denver, CO 80218

Tel. (602) 840-5900
Fax (602) 840-3012

*Counsel for Nguyen*

David A. Klibaner
KLIBANER LAW FIRM, P.C.
899 Logan Street, Ste. 200
Denver, CO 80203
david@dklawfirm.com
(Tel) (303) 863-1445

Lori J. Tucker
TUCKER LAW OFFICE
899 Logan Street, Ste 200
Denver, CO  80203
lori@ljtuckerlaw.com

*Counsel for Wallace*

**PLAINTIFFS DEMAND A TRIAL BY A JURY OF SIX
FOR THEIR ACTIONS AT LAW**