**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0639-WJM-KLM

MONG-TUYEN NGUYEN, an individual, and
BRANDI WALLACE, an individual,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin mutual
insurance company, and
USAA GENERAL INDEMNITY COMPANY, a Texas corporation,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO
CERTIFY QUESTIONS TO THE COLORADO SUPREME COURT, GRANTING IN
PART AND DENYING IN PART DEFENDANT AMERICAN FAMILY'S MOTION TO
DISMISS, AND GRANTING IN PART AND DENYING IN PART DEFENDANT USAA'S
MOTION FOR SUMMARY JUDGMENT**

---

In this putative class action, Plaintiffs Mong-Tuyen Nguyen ("Nguyen") and

Brandi Wallace ("Wallace") (together, "Plaintiffs") sue Defendant American Family

Mutual Insurance Company ("American Family") and defendant USAA General

Indemnity Company ("USAA") (together, "Defendants") for alleged breaches of various

common law and statutory duties.  (ECF No. 1.)  Before the Court are three motions:

1.     American Family's Motion to Dismiss (ECF No. 14);

2.     Plaintiffs' Motion to Certify Questions to the Colorado Supreme Court

     ("Motion to Certify") (ECF No. 21); and

3.     USAA's Early Motion for Partial Summary Judgment (ECF No. 33).

After these motions were fully briefed, Plaintiffs sought and were granted leave

to file an amended complaint.  (ECF No. 50.)  The only substantive change in the

amended complaint was Plaintiffs' insertion of a breach of contract claim based on the

alleged wrongdoings already pleaded in the original complaint.  (*See id.* ¶¶ 111–16.)

The Court finds that the arguments in the pending motions apply to the amended

complaint as well as the original complaint, and will therefore analyze the motions as if

they had been directed at the amended complaint.

     For the reasons explained below, the Court grants Plaintiffs' Motion to Certify in

part, and will certify certain questions of statutory interpretation and public policy to the

Colorado Supreme Court.  The Court also grants Defendants' respective motions in

part and will dismiss Plaintiffs' consumer deception and bad faith claims with prejudice.

The Court denies, without prejudice, Defendants' motions with respect to Plaintiffs'

declaratory judgment and breach of contract claims because the outcome of those

claims turns, at least in part, on the answers the Colorado Supreme Court may give to

the certified questions.

## I.  STATUTORY BACKGROUND

     This case centers around a form of insurance coverage often known as "Med-

Pay."  Colorado requires auto insurers selling policies in Colorado to offer a minimum of

$5,000 of Med-Pay coverage.  *See generally* Colo. Rev. Stat. § 10-4-635.  Med-Pay

coverage addresses "medical payments . . . for bodily injury, sickness, or disease

resulting from the ownership, maintenance, or use of the motor vehicle."  *Id.*

§ 10-4-635(1)(a).  It is a form of no-fault coverage.  *Id.* § 10-4-636(4)(a).

     The medical care compensable through Med-Pay includes "all medically

necessary and accident-related health care and rehabilitation services provided by a licensed health care provider to a person injured in an automobile accident for which benefits under the terms of the medical payments coverage in the policy are payable." *Id.* § 10-4-635(5)(e).  Although an insured can elect more than $5,000 in coverage, the statute governing Med-Pay requires insurers, for thirty days after receiving notice of an accident, to reserve the minimum $5,000 for payments to medical first responders, such as ambulance companies.  *Id.* § 10-4-635(2)(b), (c).

## II.  FACTS

### A.  Nguyen

Because American Family moves to dismiss Nguyen's complaint under Rule 12(b)(6), the Court accepts the following facts as true for purposes of American Family's motion.  *See Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiff Nguyen was insured under an auto insurance policy issued by American Family.  (ECF No. 50 ¶ 23.)  Nguyen purchased this policy no later than December 9, 2011.  (ECF No. 1-2 at 4; ECF No. 14 at 4 n.2.)[1]  Accompanying her policy were the statutorily required summary disclosures.  (ECF No. 14-1.)  Near the top of the first disclosure page is the following: "**PLEASE READ YOUR POLICY FOR COMPLETE DETAILS!  THIS SUMMARY DISCLOSURE FORM SHALL NOT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY ITSELF.**"  (*Id.* at 2 (formatting in original).)  *Compare* Colo. Rev. Stat. § 10-4-636(1)(a) (requiring summary disclosure

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination.

forms to "provide notice in bold-faced letters that the policyholder should read the policy for complete details, and such disclosure form shall not be construed to replace any provision of the policy itself"); *see also* 3 Colo. Code Regs. 702-5:5-2-16, § 5(A)(1) (repeating this requirement).

Concerning Med-Pay, the disclosure page stated, "When you or others in your car are injured in an auto accident, regardless of who may be at fault, this coverage pays for reasonable, appropriate and necessary medical expenses, up to the limit you choose." (*Id.*) *Compare* Colo. Rev. Stat. § 10-4-636(4)(a) (requiring summary disclosure forms to "include a disclosure specifying that * * * [Med-Pay] coverage pays for reasonable health care expenses incurred for bodily injury caused by an automobile accident, regardless of fault, up to the policy limits chosen by the insured").

The policy itself stated that Med-Pay would end either one year or three years from the date of the accident, depending on the amount of coverage elected:

> We will pay only those expenses incurred for services rendered within one year from the date of the accident. If the limit of liability for [Med-Pay] Coverage shown in the Declarations is more than $10,000, we will pay covered expenses for services rendered within three years from the date of the accident.

(ECF No. 1-2 at 16.) Nguyen selected $10,000 in coverage, placing her within the one-year limit. (*Id.* at 4.)

Nguyen was injured in an auto accident in April 2012. (ECF No. 50 ¶ 62.) "American Family paid approximately $5,700 toward Nguyen's medical bills for treatment received between April 2012 and May 2013." (*Id.* ¶ 68.) However, "American Family restricted or denied payment of Nguyen's medical expenses after April 9, 2013

4

based on" the Med-Pay one-year limitation.  (*Id.* ¶ 69.)  This was the first time Nguyen

became aware of the one-year limitation in her policy.  (*Id.*)

**B.     Wallace**

USAA moves for early summary judgment against Wallace.  (ECF No. 33.)

Given that posture, the Court finds that the following facts are undisputed unless

otherwise noted, and the Court draws all reasonable inferences in favor of Wallace.

*See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

Wallace was covered under an auto insurance policy issued by USAA to

Wallace's spouse in August 2011.  (ECF No. 33 at 2, ¶¶ 1–2; ECF No. 41 at 2, ¶ 1.)

Accompanying the policy were the statutorily required summary disclosures.  (ECF No.

33-2 at 43–46.)  The first disclosure page contained precisely the same "please read

your policy" language, bolded and in all capital letters, as in Nguyen's policy.  (*Id.* at 43.)

Unlike Nguyen's policy, this language was also set off in a slightly larger font size.  (*Id.*)

Concerning Med-Pay, the language in Wallace's disclosures was somewhat

different than in Nguyen's disclosures, but to the same effect: "Medical payments

coverage pays for reasonable health care expenses incurred for bodily injury caused by

an automobile accident, regardless of fault, up to the policy limits chosen by the

insured."  (*Id.* at 45.)  The policy itself stated that Med-Pay would end one year from the

date of the accident.  (*Id.* at 28 ("[Med-Pay] fees and expenses must * * * [b]e incurred

for services rendered within one year of the date of the auto accident.").)

Wallace was injured in a car accident on October 1, 2011.  (ECF No. 33 at 3,

¶ 6.)  Wallace had the default $5,000 in Med-Pay coverage.  (*Id.* ¶ 4.)  She claims that

5

"USAA initially denied [Med-Pay] coverage for claimed treatment for inadequate documentation, and then in March 2013 rejected coverage based on its one-year limitation on Med-Pay benefits." (ECF No. 50 ¶ 72.)  Wallace does not say whether this was the first time she learned of that one-year limit, although she claims that, "[a]t the time that the policy was purchased, [she] understood that the $5,000 in Med Pay coverage would cover all reasonable and necessary medical expenses arising from the accident, with no time limit." (ECF No. 41 at 3, ¶ 5.)

## C.   This Action

Plaintiffs filed this lawsuit on March 27, 2015, invoking federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (ECF No. 1 ¶ 16.)  Plaintiffs filed an amended complaint on October 6, 2015.  (ECF No. 50.)  Plaintiffs currently assert causes of action for violation of the Colorado Consumer Protection Act ("CCPA") (Claim 1), common law bad faith denial of insurance benefits (Claim 2), statutory bad faith denial of insurance benefits (Claim 3), declaratory relief (Claim 4), and breach of contract (Claim 5).  Plaintiffs' primary theory is that the Med-Pay statute, Colo. Rev. Stat. § 10-4-635, does not permit an insurer to place time limits on Med-Pay coverage. (ECF No. 50 ¶¶ 3, 7.)  Plaintiffs' secondary theory is that Defendants' summary disclosures are deceptive (and therefore a violation of the CCPA) because they do not disclose the time-limited nature of Med-Pay coverage.  (*Id.* ¶¶ 9, 88; *see also* Part III.B, *infra.*)

## III.  ANALYSIS

The Court will first address Plaintiffs' Motion to Certify as to the question of

whether Med-Pay time limits are permissible.  That question relates primarily to Plaintiffs' claims for declaratory judgment and breach of contract (Claims 4 and 5).  The Court will then address American Family's Motion to Dismiss and USAA's Motion for Summary Judgment as those motions relate to Plaintiffs' remaining claims.

## A.    Motion to Certify

Plaintiffs ask this Court to certify to the Colorado Supreme Court the question of whether an insurer violates Colorado law or public policy when it places time limits on Med-Pay coverage.  (ECF No. 21 at 1–2.)  As explained below, Plaintiffs and their counsel have done essentially nothing to merit certification.  In most circumstances, a motion to certify such as that filed here should be denied out of hand.  However, the Court finds that this is a highly exceptional situation.  The circumstances of this particular case reveal that the question at issue can ultimately be resolved only through what amounts to judicial legislation—a task ill-suited to a federal court sitting in diversity.  Thus, the Court will certify this question, although in modified form.

### 1.    Prior Lawsuits

This is not the first time that a court has faced a dispute over Med-Pay time limits in Colorado.  In 2010, Farmers Insurance Exchange removed to this Court a Colorado state court class action brought by an individual named Lawrence Countryman (represented by Plaintiffs' counsel here) asserting essentially the same theories asserted in this lawsuit.  (*See Countryman v. Farmers Ins. Exch. et al.*, No. 1:10-cv-01075-REB-KMT (D. Colo., removed May 7, 2010).)  The Hon. Robert E. Blackburn was assigned to that case and ruled in June 2012 that the Med-Pay statute, Colo. Rev. Stat. § 10-4-635, does not prohibit a two-year time limit on Med-Pay

7

coverage. *Countryman v. Farmers Ins. Exch.*, 865 F. Supp. 2d 1108, 1112 (D. Colo. 2012). Judge Blackburn thoroughly examined the legislative history of the Med-Pay statute and was particularly persuaded by its emphasis on ensuring that trauma care providers receive payment. *Id.* at 1111–12. Given that trauma care tends to be the first sort of medical expense arising from an auto accident, Judge Blackburn found "nothing to suggest that a two-year limitation on the submission of med-pay claims would offend the intent of the statute or the public policy impelling it." *Id.* at 1112.

The Tenth Circuit affirmed this ruling, essentially adopting Judge Blackburn's reasoning, although in an unpublished disposition. *Countryman v. Farmers Ins. Exch.*, 545 F. App'x 762, 764–66 (10th Cir. 2013). The Tenth Circuit added that the Med-Pay statute's $5,000 default coverage amount "is not large enough to be expected to cover significant or long-term medical care after trauma care has been paid. This suggests the legislature did not intend to require all coverage to include open-ended time frames." *Id.* at 765.

While *Countryman* was pending, a similar class action was proceeding against USAA in Garfield County District Court. (*See Cortez v. USAA Cas. Ins. Co.*, No. 11CV148 (Garfield Cnty. Dist. Ct.).) The plaintiff in that lawsuit, Eduardo Cortez, likewise alleged that the Med-Pay statute did not permit an insurer to impose time limits.[2] By order filed in August 2012, the state court, per the Hon. James B. Boyd, resolved a summary judgment motion on that question. (ECF No. 20-26.) Judge Boyd concluded that the Med-Pay statute is "silent about the time frame during which . . .

---

[2] Although citing the Court to no evidence, American Family claims that Plaintiffs' counsel here also litigated the *Cortez* case. (ECF No. 26 at 6.)

coverage must be provided," and that such silence is "ambiguous."  (*Id.* ¶¶ 5–6.)  Judge Boyd then considered legislative history and again found some ambiguity.  Judge Boyd noted that the relevant history is "virtually silent" on any other purpose for the Med-Pay statute than to ensure that emergency trauma care providers are compensated.  (*Id.* ¶ 11.)  "On the other hand, if the legislature's only intent was to provide for emergency trauma providers, it easily could have eliminated the terms of the statute which provide coverage for other medical care."  (*Id.*)

Judge Boyd then turned to decisions from other states about how to apply statutory rights that seem to call for a time limit, although none is specified.  (*Id.* ¶ 15.)  Drawing from these decisions, Judge Boyd held that "the Med-Pay mandate . . . requires that the coverage continue for a reasonable time.  In the absence of a statutory or regulatory definition of the duration of a reasonable time, an insurance contract may define the duration of the coverage, so long as it is reasonable."  (*Id.* ¶ 18.)  Nonetheless, Judge Boyd rejected USAA's argument that a one-year limit was permissible as a matter of law.  (*Id.* ¶ 20.)  "Neither the statute nor the record before the Court demonstrates the one year of coverage set forth in the Policy is reasonable as a matter of law.  This remains a disputed issue of fact not properly resolved [in the present posture]."  (*Id.* ¶ 21.)[3]

Finally, in April 2013, the Hon. R. Brooke Jackson of this Court faced the same question presented to Judges Blackburn and Boyd.  *See Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1102–03 (D. Colo. 2013).  Agreeing with Judge

---

[3] No party informs this Court of precisely how the *Cortez* case was resolved (*e.g.*, whether it was settled, dismissed, etc.).

Blackburn's reasoning, Judge Jackson found it just as applicable to the three-year limitation at issue there as it was to the two-year limitation at issue in *Countryman*. *Id.* at 1103.

    2.   <u>This Lawsuit</u>

Plaintiffs' counsel have now found new Plaintiffs to re-raise the same question already passed upon by one unpublished Tenth Circuit opinion, two published District of Colorado opinions, and one unpublished Colorado state court opinion. Unlike any of the previous federal cases, however, Plaintiffs filed their lawsuit in this Court rather than coming to this Court through the various defendants' choice to remove. Plaintiffs appear to justify this choice under the assumption that claims based on Med-Pay denials will likely be small, requiring a class action to make them viable, and any class action raising the questions Plaintiffs raise here will likely be litigated in federal court "given the availability of removal under the Class Action Fairness Act, 28 U.S.C. §§ [*sic*] 1332(d)." (ECF No. 21 at 5.)

Whether true or not, parties seeking a binding state court decision should file their lawsuits in state court, even if they know that the defendant might remove. Plaintiffs' choice to file in this Court *and* seek certification to the Colorado Supreme Court smacks of pure gamesmanship, somewhat like a defendant who removes to federal court and then asks that Court to abstain from exercising jurisdiction. *Cf. MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 2015 WL 3961098, at *1 (D. Colo. June 29, 2015). It is procedural exploitation—in this case, exploiting a method of going directly to the Colorado Supreme Court without the time and expense of litigating a state court case to judgment and through the Colorado Court of Appeals.

Moreover, Plaintiffs could have asked for certification from this Court or the Tenth Circuit in the *Countryman* proceedings.  Indeed, one of the first questions asked of Plaintiffs' counsel at oral argument in the Tenth Circuit was, "Why didn't somebody seek to certify this question to the Colorado Supreme Court?"  (ECF No. 21-4 at 2.) Counsel responded, "It is a novel question of state law and [an] important question of policy, but we have confidence in the ability of this Court to adjudicate it."  (*Id.*)  It makes little sense for Plaintiffs' counsel to occupy this Court's and the Tenth Circuit's time with the same novel question of state law, lose both times, and then re-raise the same question in this action and finally seek certification.

3.     Desirability of Certification

All of the preceding discussion counsels strongly against certification in this instance.  Nonetheless, the Court will certify purely on account of the question presented and the lack of standards by which to resolve it.

The Med-Pay statute's legislative history (which focuses on guaranteeing payments to trauma care providers) and the relatively small amount of default coverage ($5,000) both suggest that the legislature never intended to require time-unlimited Med-Pay coverage.  (*See* Part III.A.1, *supra*.)  Thus, both a two-year and three-year limit (as in *Countryman* and *Baker*, respectively) seem unobjectionable.

But what is the limit of this reasoning?  In a footnote, the Tenth Circuit highlighted the problem:

> Mr. Countryman contends that such an interpretation is problematic because it could be extended to allow insurers to issue policies with limits as short as 72 hours.  Such a short time frame would be more likely to conflict with the legislative purpose and public policy goals of the statute than

does the two-year limit.  But we do not face that issue here.

*Countryman*, 545 F. App'x at 765 n.4.  This Court likewise does not face the issue of a 72-hour limit, but the underlying questions cannot be avoided.  If an insurer may impose a time limit on Med-Pay coverage, may it impose any time limit?  If, say, 72 hours is too short, then *why* is it too short, and what force does that reasoning continue to possess as the time limit grows to a month, six months, one year, and so forth?

Judge Boyd avoided these questions by imposing a reasonableness requirement on any Med-Pay time limit.  (ECF No. 20-26 ¶¶ 18–21.)  Judge Boyd's solution has some appeal, but raises a thorny question of its own: reasonable as compared to what?  As compared to the severity of the injuries?  Such a standard would create numerous difficulties.  Neither the insurer nor the insured could know how long Med-Pay coverage would last until the injury occurs, and then the insurer's decision setting that limit could itself become the focus of litigation.  Moreover, the correlation between the severity of the injury and a reasonable length of coverage may be difficult to discern.  In many cases the correlation might be inverse, given that severe injuries could exhaust Med-Pay coverage quickly (*e.g.*, injuries requiring immediate, major surgery) while lesser injuries may require many smaller payouts for treatments administered over time (*e.g.*, injuries treatable through physical therapy or pain injections).  Finally, a reasonableness requirement tied to the severity of the injury would also raise questions of whether the insurer ever has a duty to revisit its time-limit decision, such as when latent injuries begin to manifest themselves.  Any decision in that regard could prompt new litigation.

Perhaps reasonableness could instead be judged by the amount of coverage elected, similar to American Family's one-year/three-year distinction.  (*See* Part II.A,

12

*supra.*)  But that would seem to call for a formula nowhere evident in the statute or elsewhere, *e.g.*, so many thousands of dollars in coverage equals so many months or years of payments, etc.

Finally, perhaps reasonableness can be settled once and for all by reference to the statute itself and its purposes.  For example, one year might be the lower limit of reasonableness in light of the legislative history, insurers' needs for certainty, and insureds' expectations.  Or perhaps the time limit could be as short as thirty days, because that is how long an insurer must reserve the first $5,000 in Med-Pay coverage to satisfy claims submitted by trauma care providers.  *See* Colo. Rev. Stat. § 10-4-635(2)(c).

In all events, unless the Med-Pay statute requires time-unlimited coverage—which strikes the undersigned as the least likely proposition—then resolving the permissibility of any particular time limit will require either: (1) many adjudications "cluster[ing] around the opposite poles" and finally arriving at "a mathematical line . . . which is so far arbitrary that it might equally well have been drawn a little farther to the one side or to the other," Oliver Wendell Holmes, Jr., *The Common Law* 127 (1881); or (2) an authoritative statement of the shortest permissible time limit, or at least of the principles by which any particular time limit should be judged.

The first option may be the best course in some circumstances, but not here. Certainty and predictability are of particular importance in the insurance context, both for insurers and insureds.  The Court therefore concludes that an authoritative statement is the better option.  Only the Colorado Supreme Court can provide an authoritative statement binding in both federal and Colorado courts.  *See Clark v. State*

13

*Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003) (federal courts sitting in diversity are not bound by the decisions of state intermediate appellate courts). Moreover, barring some revelation of legislative history or other authority not already considered by the parties and judges in the *Countryman*, *Cortez*, and *Baker* matters, any resolution will likely come down to a pure balancing of various state policies. The Colorado Supreme Court is far more competent to make such judgments than a federal court sitting in diversity.

Accordingly, the Court will certify the following questions to the Colorado Supreme Court:

1.  Does Colorado Revised Statute § 10-4-635 ("Med-Pay statute"), or any other principle of Colorado law or public policy, prohibit an insurer from imposing a time limit on coverage provided under the Med-Pay statute?

2.  If the answer to the first question is no, does the Med-Pay statute, or any other principle of Colorado law or public policy, restrict an insurer's choice of the time limit to impose?

3.  If the answer to the second question is yes, by what standard does a court judge whether the insurer has imposed a permissible time limit?

**B.    CCPA (Claim 1)**

Plaintiffs also ask this Court to certify a question concerning their CCPA cause of action. (ECF No. 21 at 2.) The Court, however, finds that Plaintiffs' CCPA claim fails as a matter of law and is therefore inappropriate for certification to the Colorado Supreme Court.

14

1.     Basis of the CCPA Claim

Plaintiffs base their CCPA claim on the summary disclosure page's statement that Med-Pay coverage "pays for reasonable, appropriate and necessary medical expenses, up to the limit you choose."  (ECF No. 14-1 at 2; *see also* ECF No. 33-2 at 45.)  Plaintiffs argue that this statement is deceptive because "the coverage provided does not cover expenses 'up to the limit' chosen by [the insured].  Instead, it covers those expenses only if they were incurred within one year of the accident."  (ECF No. 20 at 10.)

It seems reasonable to assume that, upon learning that an auto insurance policy cuts off Med-Pay benefits after one year, some auto insurance consumers would refuse to buy such a policy—or cancel an existing policy—and look instead for a policy that offers longer or no time limits.  Similarly, where an insurer like American Family offers differing time limits based on the amount of coverage elected, some consumers might elect more or less coverage if fully informed about the correlation between coverage amounts and time limits.  And perhaps some consumers would decline Med-Pay altogether, reasoning that the premium is not money well spent if it does not actually guarantee up to $5,000 in coverage.

All the foregoing are assumptions and the Court does not mean to establish anything either as a matter of law or fact by stating them, but they are the assumptions on which Plaintiffs rely.  (*See* ECF No. 50 ¶ 9.)  Taking them as established *arguendo*, Defendants contend that Plaintiffs nonetheless did not timely file their CCPA claim. (ECF No. 14 at 10–11; ECF No. 33 at 13–16.)

As explained below, the Court *sua sponte* finds that Plaintiffs' CCPA claim, as

15

pleaded, fails for lack of Article III jurisdiction and would fail to state a claim in any

event.  Alternatively, the Court agrees that Plaintiffs did not timely file their CCPA claim.

   2.   Article III Jurisdiction & Failure to State a Claim

   This Court has a duty to examine its subject matter jurisdiction, even when the

parties do not dispute it.  *Niemi v. Lasshofer*, 728 F.3d 1252, 1259 (10th Cir. 2013).

Article III, section 2, of the United State Constitution restricts federal court jurisdiction to

"Cases" and "Controversies."  The "irreducible constitutional minimum" of a properly

presented case or controversy is as follows:

> First, the plaintiff must have suffered an "injury in fact"—an
> invasion of a legally protected interest which is (a) concrete
> and particularized, and (b) "actual or imminent, not
> 'conjectural' or 'hypothetical.'"  Second, there must be a
> causal connection between the injury and the conduct
> complained of . . . .   Third, it must be "likely," as opposed to
> merely "speculative," that the injury will be "redressed by a
> favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted;

alterations in original).  As will become evident, Plaintiffs fail the second element of this

test (causation).

   Plaintiffs' Complaint lists six ways in which Defendants allegedly behaved

deceptively:

> (1) marketing and issuing policies containing a one- or
> three-year time limitation on Med-Pay without disclosing in
> advance to the insured the existence and nature of the time
> limitation;
>
> (2) providing misleading disclosure statements regarding the
> terms, scope, and availability of Med-Pay;
>
> (3) failing to offer time-unlimited Med-Pay to all insureds as
> required by statute;

(4) marketing and issuing policies containing a time limitation
on Med-Pay which was void and unenforceable;

(5) falsely implying that the time limitation of coverage
appearing in its policy language was valid and enforceable;
and

(6) limiting or denying coverage, and discouraging insureds
from seeking coverage, based upon a void and
unenforceable coverage limitation.

(ECF No. 50 ¶ 88 (line breaks inserted for clarity).)  However, in response to

Defendants' motions, Plaintiffs defend only their second accusation, regarding the

summary disclosures.  (*See* ECF No. 20 at 9–13; ECF No. 41 at 9–12.)  Moreover, in

elaborating on their second question they wish certified to the Colorado Supreme Court,

Plaintiffs say that they "intend [it] to determine whether the insurer violates the Med Pay

statute and therefore Colorado bad faith and consumer protection law by varying the

terms of Med Pay coverage while using the mandatory disclosures under the statute to

mislead consumers about the scope of coverage."  (ECF No. 40 at 3.)  Thus, the

relevant alleged deception is the summary disclosures' failure to state that Med-Pay

coverage expires after a certain time.[4]

---

[4] The Court notes that Plaintiffs' other accusations of consumer deception likely fail as a
matter of law anyway.  The CCPA requires the plaintiff to plead "a false representation" that
"either induce[s] a party to act, [or] refrain from acting, or ha[s] the capacity or tendency to
attract consumers."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d
142, 147 (Colo. 2003).  Plaintiffs' third accusation is not a "representation," and the Complaint
contains nothing about the representations supposedly accompanying the fourth through sixth
accusations, unless Plaintiffs mean to refer back to the summary disclosures (making those
accusations redundant of the second accusation).  Moreover, Plaintiffs' third through sixth
accusations all derive from the notion that Colorado Revised Statute § 10-4-635 requires time-
unlimited Med-Pay coverage.  But § 10-4-635 does not specify any such requirement, and all
courts faced with the issue so far have rejected the notion that the statute contains that
requirement.  Defendants therefore cannot be said to have made a "false representation"
simply by acting under the assumption that § 10-4-635 does not prohibit time limits.  Finally,
Plaintiffs' first accusation raises serious questions about how much an insurer must disclose to

In terms of the injury flowing from this deception, Plaintiffs' Complaint generically states that Defendants have "misled their insureds about the nature of their coverage, deprived them of the opportunity to compare different coverage levels, and deceived them into purchasing coverage that they would not have otherwise purchased."  (ECF No. 50 ¶ 9.)  Thus, the injury is paying for something later discovered to be far less valuable than represented.

The problem for Plaintiffs is the "causal connection between the injury and the conduct complained of."  *Lujan*, 504 U.S. at 560.  Specifically, Plaintiffs fail to allege that they actually read the summary disclosures when considering whether to buy or keep their policies.  Plaintiffs cannot say that the "conduct complained of" (alleged deception in the summary disclosures) caused their respective injuries (lulling them into paying the policy premium, or failing to seek a refund) if they did not read the disclosures.  Thus, Plaintiffs lack Article III standing to complain about injuries flowing from an alleged deception of which they were unaware.

The same analysis demonstrates why Plaintiffs fail to state a CCPA claim.  The elements of the CCPA claim are as follows: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and

---

a consumer *before* delivering the summary disclosures page.  *Compare* Colo. Rev. Stat. § 10-4-635(1)(a) (requiring the summary disclosures to contain, among other things "an explanation of the major coverages and exclusions") *with id.* § 10-4-635(c) (requiring insurers to "furnish the required disclosure form to applicants . . . at the time of the initial insurance purchase").

(5) the challenged practice caused the plaintiff's injury. *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). Plaintiffs cannot satisfy the fourth and fifth elements absent an allegation that they read the summary disclosures. Thus, as pleaded, their CCPA claim fails as a matter of law. *See HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011) ("All elements of a CCPA claim must be met; otherwise, the claim fails as a matter of law.").[5]

For all of these reasons, Plaintiffs' CCPA claim is dismissed.

3.    <u>Statute of Limitations</u>

Even if Plaintiffs were to plead that they read the summary disclosures, the Court would hold that they did not timely filed this lawsuit.

The statute of limitations for a CCPA claim is three years, but with certain nuances:

> All actions brought under this article must be commenced within three years after [1] the date on which the false, misleading, or deceptive act or practice occurred or [2] the date on which the last in a series of such acts or practices occurred or [3] within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

Colo. Rev. Stat. § 6-1-115. The allegedly "false, misleading, or deceptive act or practice" by which the Court must judge the CCPA statute of limitations is Defendants'

---

[5] The Colorado Supreme Court has held that a plaintiff may satisfy the first element of the CCPA test—an unfair or deceptive trade practice—"by establishing either a misrepresentation or that the false representation had the capacity or tendency to deceive, even if it did not." *Rhino*, 62 P.3d at 148. This seems to suggest that a CCPA claim contains no reliance requirement. Nonetheless, a CCPA claim certainly contains a causation requirement, which is not satisfied under the facts of this case either as a matter of CCPA law or this Court's Article III jurisdiction.

failure to specify the Med-Pay time limits in the summary disclosures.

Plaintiffs received their respective summary disclosures in or around August 2011 (Wallace) and December 2011 (Nguyen).  Thus, Plaintiffs fail the first prong of the CCPA statute of limitations ("three years after the date on which the false, misleading, or deceptive act or practice occurred") because they filed this lawsuit on March 27, 2015.  (*See* ECF No. 1.)

As for the second prong ("within three years after . . . the date on which the last in a series of such acts or practices occurred"), Plaintiffs emphasize the phrase "last in a series," apparently meaning to argue that the denial of their claims constituted the last in a series of actionable violations.  (ECF No. 20 at 14; ECF No. 41 at 14 n.3.)  But the language of the statute requires "the last in a series of *such acts*" (emphasis added), with "such acts" referring back to "the false, misleading, or deceptive act or practice." The Colorado Supreme Court defines this as requiring a "a false representation" that "either induce[s] a party to act, [or] refrain from acting, or ha[s] the capacity or tendency to attract consumers."  *Rhino*, 62 P.3d at 147.   Plaintiffs do not explain how a denial of coverage according to the plain terms of the policy, even if ultimately void, is a "false representation" or otherwise a "false, misleading, or deceptive act or practice."  Thus, Plaintiffs have not satisfied the second prong of the CCPA statute of limitations.

The third prong ("within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice") is the real dispute.  In this case, Plaintiffs could have discovered the alleged deception in the summary disclosures by reading their respective policies and thereby learning of the one-year limitation.  Given this,

Plaintiffs essentially argue that they had no duty to read to their policies and discover the one-year Med-Pay limit until their Med-Pay coverage was discontinued because of that limit.  Implicit in this argument is Plaintiffs' belief that they were entitled to rely on the summary disclosures for the full knowledge of their policy terms.  For at least two reasons, this belief is unsupported by Colorado law.

First, as previously noted, the summary disclosures issued to both Plaintiffs contained the following language near the top: "**PLEASE READ YOUR POLICY FOR COMPLETE DETAILS!  THIS SUMMARY DISCLOSURE FORM SHALL NOT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY ITSELF.**"  (ECF No. 14-1 at 2 (formatting in original); ECF No. 33-2 at 43 (formatting in original).)  This language, moreover, is a statutory requirement: "Each summary disclosure form shall provide notice in bold-faced letters that the policyholder should read the policy for complete details, and such disclosure form shall not be construed to replace any provision of the policy itself."  Colo. Rev. Stat. § 10-4-636(1)(a).  The fact that Colorado law requires this language strongly suggests that an insured in Colorado has no right to rely on a summary disclosure, to the exclusion of reading the policy itself.

Second, although the Court could locate no Colorado case directly on point, Colorado case law in analogous situations does not support Plaintiffs' position.  For example, a temporary insurance binder does not supersede the policy eventually issued, even if the policy contains less coverage than provided by the binder, because "[a]n insured is charged with knowledge of the policy's terms."  *Unigard Sec. Ins. Co. v. Mission Ins. Co. Trust*, 12 P.3d 296, 300 (Colo. Ct. App. 2000).  For the same reason,

an insurance agent's misrepresentation of coverage does not excuse an insured from reading his or her policy to learn the actual terms of coverage. *Branscum v. Am. Cmty. Mut. Ins. Co.*, 984 P.2d 675, 680 (Colo. Ct. App. 1999) (finding that an agent's misstatement of coverage could not support a negligent misrepresentation claim against insurer: "the insured, under these circumstances, is presumed to have knowledge of the restrictions stated in the policy"); *Pete's Satire, Inc. v. Commercial Union Ins. Co.*, 698 P.2d 1388, 1391 (Colo. Ct. App. 1985) (reversing breach-of-contract judgment against insurer because agent's statements regarding coverage were not binding: "The [insureds] were in possession of th[e] policy and are charged with knowledge of the restrictions in the policy."); *see also Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 658 (Colo. 2011) ("Although normally a party to a contract can be presumed to know the content of that contract, this presumption does not apply in the context of *insurance-policy renewals*." (emphasis added; citation omitted)).

The Court acknowledges that, under the "reasonable expectations" doctrine, failure to read one's policy is not always dispositive. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1054 (Colo. 2011) (noting that the reasonable expectations doctrine "deviate[s] from several well-established rules governing the construction of contracts, including the tenet that a party is presumed to know the content of a contract signed by him" (internal quotation marks omitted)). The reasonable expectations doctrine, however, is a basis on which to bring a claim for breach of contract (*i.e.*, to argue for coverage beyond the policy's literal terms). *Id.* at 1050 (reasonable

expectations doctrine "is implicated where there is a dispute about the existence of insurance coverage" and "supplements, but does not replace, traditional principles of contract interpretation").  The question of whether a party has timely brought a CCPA claim is materially different, at least under these circumstances.  Plaintiffs argue that they are entitled to rely on the summary disclosure alone, but as already noted, the very statute requiring the summary disclosure also requires the insurer to state "that the policyholder should read the policy for complete details, and such disclosure form shall not be construed to replace any provision of the policy itself."  Colo. Rev. Stat. § 10-4-636(1)(a).  Thus, even assuming that the reasonable expectations doctrine could apply to the question of when an individual should have discovered the deception underlying a CCPA claim, the Court holds that the summary disclosures do not excuse a party from reading his or her policy.[6]

Plaintiffs received their policies in 2011 and had three years to read them and discover that Med-Pay coverage is not time-unlimited, supposedly contrary to what they believed they paid for.  Plaintiffs did not do so, and the CCPA statute of limitations therefore bars their CCPA claim.[7]

_____

[6] This analysis is not meant to prejudge any application of the reasonable expectations doctrine that Plaintiffs might allege as part of their breach of contract claim.

[7] In a fallback argument, Plaintiffs invoke the CCPA statute of limitations' extension clause, which provides an extra year "if the plaintiff proves that failure to timely commence the action was caused by the defendant engaging in conduct calculated to induce the plaintiff to refrain from or postpone the commencement of the action."  Colo. Rev. Stat. § 6-1-115. Plaintiffs argue that this clause applies because "the misstatement in the disclosure . . . would prevent a reasonable consumer from discovering that the fine print of her policy provided for lesser coverage."  (ECF No. 20 at 15.)  But nothing about the summary disclosures would "prevent" an insured from reading his or her policy, nor could a document stating "**PLEASE READ YOUR POLICY FOR COMPLETE DETAILS!**" be reasonably construed as something "calculated to induce" an insured *not* to read the policy.  Moreover, the one-year limitation was

**C.      Common Law Bad Faith (Count 2) & Statutory Bad Faith [Colo. Rev. Stat. § 10-3-1115] (Count 3)**

The Court agrees with Defendants that Plaintiffs' common law and statutory bad faith claims do not state a claim on which relief may be granted.  (*See* ECF No. 33 at 7–8.)

A common law bad faith claim has two elements: (1) the insurer's conduct was unreasonable, and (2) the insurer had knowledge that the conduct was unreasonable or a reckless disregard for the fact that the conduct was unreasonable.  *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275–76 (Colo. 1985).  A statutory bad faith claim may be satisfied by proving only the first element.  *See Wagner v. Am. Family Mut. Ins. Co.*, 569 F. App'x 574, 579–80 (10th Cir. 2014).  For either claim, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."  *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. Ct. App. 1996).  The information available to the insurer at the time of the decision "includ[es] the state of the law."  *Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1148 (10th Cir. 2005).

When USAA cut off Wallace's Med-Pay benefits in March 2013 (ECF No. 50 ¶ 72), and when American Family cut off Nguyen's Med-Pay benefits in or around May 2013 (*id.* ¶¶ 67–69), the permissibility of a one-year Med-Pay limit was unsettled.  Judge Boyd's unpublished *Cortez* decision (August 2012) held that Med-Pay time limits were entirely questions of reasonableness under the circumstances, and Judge

---

not in "fine print."  In both American Family's and USAA's policies, the explanation of Med-Pay coverage was printed in the same font and size as the policy generally. (*See* ECF No. 1-2 at 16; ECF No. 33-2 at 28.)  This argument therefore fails.

Blackburn's *Countryman* decision (June 2012) held that a two-year limitation was

permissible.  (*See* Part III.A.1, *supra*.)  Moreover, Judge Jackson's *Baker* decision (April

2013) may have been issued when American Family made its decision as to Nguyen.

(*See id*.)  Although the Colorado Supreme Court may ultimately disagree with some or

all of these decisions, the Court holds as a matter of law that Defendants' choice to

enforce the plain terms of the one-year limitation in Plaintiffs' respective policies was

not unreasonable given the Med-Pay statute's silence on time limits, the statute's

legislative history, and the foregoing decisions.  *See, e.g.*, *Anderson*, 416 F.3d at 1148

("State Farm's explanation of UM/UIM coverage was based upon a reasonable, albeit

mistaken, belief that under the law owned-but-not- insured exclusions in insurance

policies providing UM/UIM coverage were valid.  Because State Farm did not act

unreasonably, Anderson's bad faith claim necessarily fails.").  As such, Plaintiffs fail to

state any bad faith claim.

D.     **Declaratory Judgment (Claim 4) & Breach of Contract (Claim 5)**

Although Defendants seek dismissal of all of Plaintiffs' causes of action,

Plaintiffs' declaratory judgment and breach of contract claims turn on the questions this

Court will certify to the Colorado Supreme Court.  With respect to these claims,

Defendants' motions are denied without prejudice pending the Colorado Supreme

Court's response.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendant American Family's Motion to Dismiss (ECF No. 14) is GRANTED  with

respect to Plaintiffs' Claims 1, 2, and 3, and DENIED WITHOUT PREJUDICE with respect to Plaintiffs' Claims 4 and 5;

2.   Defendant USAA General Indemnity Company's Early Motion for Partial Summary Judgment is GRANTED with respect to Plaintiffs' Claims 1, 2, and 3, and DENIED WITHOUT PREJUDICE with respect to Plaintiffs' Claims 4 and 5;

3.   Plaintiffs' Claims 1, 2, and 3 are DISMISSED WITH PREJUDICE;

4.   Plaintiffs' Motion to Certify Questions to the Colorado Supreme Court (ECF No. 21) is GRANTED IN PART and DENIED IN PART;

5.   Pursuant to Colorado Appellate Rule 21.1, the Court CERTIFIES the following questions to the Colorado Supreme Court:

   a.   Does Colorado Revised Statute § 10-4-635 ("Med-Pay statute"), or any other principle of Colorado law or public policy, prohibit an insurer from imposing a time limit on coverage provided under the Med-Pay statute?

   b.   If the answer to the first question is no, does the Med-Pay statute, or any other principle of Colorado law or public policy, restrict an insurer's choice of the time limit to impose?

   c.   If the answer to the second question is yes, by what standard does a court judge whether the insurer has imposed a permissible time limit?

6.   Pursuant to Colorado Appellate Rule 21.1(d), the Clerk shall forward this order to the Colorado Supreme Court under the Clerk's official seal;

7.   Pursuant to Colorado Appellate Rule 21.1(e), fees and costs assessed by the Colorado Supreme Court shall be borne by Plaintiffs; and

8.   The Magistrate Judge's order staying discovery (ECF No. 39) is converted into a

general stay.  This matter is therefore STAYED until further order.  If the

Colorado Supreme Court chooses not to answer the certified questions, the

parties shall file a joint status report within five business days of that decision.  If

the Colorado Supreme Court chooses to answer the certified questions, Plaintiffs

shall file a status report stating as much within two business days of that

decision; Plaintiffs shall file a status report within two business days of receiving

any briefing or oral argument schedule, or any change to such a schedule; and

the parties shall file a joint status report within five business days of the date on

which the Colorado Supreme Court issues its opinion answering the certified

questions.


Dated this 8th day of October, 2015.

BY THE COURT:

_____

William J. Martinez
United States District Judge
